JOYCE ANN SCHERTZ, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 23128

April 2, 1993                                     849 P.2d 1058

*Roderic A. Carucci,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Dorothy Nash Holmes,* District Attorney and *Gary H. Hatlestad* and *David H. T. Wayment,* Deputy District Attorneys, Washoe County, for Respondent.

---

[5]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court denying Joyce Schertz's motion to withdraw her plea of no contest to one count of conspiracy to obtain money by false pretenses, a violation of NRS 199.480 and 205.380.

On April 9, 1990, Schertz accessed her account at Valley Bank of Nevada with her automatic teller machine (ATM) card. The receipt from her transaction indicated that her account balance was approximately $5,000 more than the amount she expected to be in her account. Schertz immediately notified a bank employee about the discrepancy. The bank employee told Schertz that there was no mistake and the money was hers to spend.

Several days later, Schertz conducted another ATM transaction and discovered that her account balance still evidenced the unexpected $5,000. Once again, Schertz contacted the bank. A bank employee told her that somebody else probably placed the money in her account and as far as the bank was concerned she was free to spend the money. Schertz paid off a student loan, reupholstered furniture, paid medical bills, and spent money on her children.

Several months later, Valley Bank discovered its error. A branch manager of the bank and a security officer, a former FBI agent, approached Schertz at her home. The branch manager notified Schertz of the bank's mistake and demanded return of the money. Schertz offered to make monthly payments of $50, but the branch manager refused. The branch manager stated that unless Schertz made full restitution immediately, she would be prosecuted.

The state initially charged Schertz with one count of grand larceny, a violation of NRS 205.237, and one count of obtaining

money by false pretenses, a violation of NRS 205.380. Pursuant to plea negotiations, Schertz entered a plea of no contest to one count of conspiracy to obtain money by false pretenses, a violation of NRS 199.480 and 205.380. The state acknowledges that the conspiracy charge is fictional. The district court sentenced Schertz to a term of one year in the Washoe County jail. The district court suspended the sentence and placed Schertz on probation for an indeterminate period not to exceed three years. The district court ordered Schertz to pay $4,706.44 in restitution.

After paying the restitution in full, Schertz filed a motion to withdraw her plea, which included allegations of ineffectiveness assistance of counsel and manifest injustice. The state opposed the motion. After conducting an evidentiary hearing, the district court denied Schertz's motion. This appeal followed.

Schertz entered a plea of no contest to conspiracy to obtain money by false pretenses. All parties acknowledge that the conspiracy charge was fictional. There is no allegation, nor could there be, that Schertz acted with any other person in obtaining money from the bank.

The state initially charged Schertz with grand larceny and obtaining money by false pretenses. NRS 205.237 provides, in part: "A person who uses a card or other device for automatically withdrawing or transferring money in a financial institution *to obtain intentionally money to which [she] knows [she] is not entitled* is guilty of grand larceny and shall be punished by imprisonment in the state prison for not less than 1 year . . . ." (Emphasis added.) Clearly, Schertz did not use her ATM card to obtain the money. Her account balance indicated that she had the money before she withdrew the funds.[1] In any event, Schertz

---

[1]The following exchange between Schertz's attorney and Larry Johnston, the branch manager, provides a description of the bank's mistake:

[Schertz's attorney]: Q. The mistake was made when erroneously the checking account of Joyce Schertz was linked to the savings account of another individual which would allow Miss Schertz to withdraw money from her checking, using her checking [ATM] card and withdrawing the money from the other individual's savings account.

The balance of the savings account of the other individual was, at the time the mistake was made, over $5,000.

There was the mistake that was made, was a simple transposition. There were two numbers different that were erroneously switched, which caused the problem. [sic]

Would that be two numbers on the savings account number, the ATM number, which numbers were erroneously switched, if you know?

[Larry Johnston]: A. It would have had to have been the savings account number that was opened up later. So in other words, monies weren't erroneously deposited into her account. What happened, was it was made possible that she could access the monies in her [ATM] card.

Subsequently, Johnston agreed that the bank's mistake created an impression that the money was in Schertz's account.

believed that she was entitled to the funds at the time she withdrew the money.[2] There is no evidence to the contrary.

NRS 205.380 provides, in part: "Every person *who knowingly and designedly by any false pretense* obtains from any other person any . . . money, . . . *with intent to cheat or defraud* the other person, is a cheat, and, unless otherwise prescribed by law, shall be punished . . . ." (Emphasis added.) The elements of the crime of obtaining money by false pretenses are (1) intent to defraud, (2) a false representation, (3) reliance on that representation, and (4) that the victim be defrauded. Barron v. State, 105 Nev. 767, 774, 783 P.2d 444, 449 (1989). There is no evidence that Schertz intended to defraud the bank, no evidence that she made a false representation, and no evidence that the bank relied on that non-existent representation. *Cf.* Gorka v. State, 107 Nev. 851, 822 P.2d 111 (1991) (insufficient evidence to sustain conviction of obtaining money by false pretenses where the record is devoid of any evidence supporting the conclusion that appellant misrepresented her place of residence).

Under these specific and undisputed facts, we conclude that there was no basis for prosecution of Schertz.[3] Accordingly, the judgment of conviction entered by the district court is vacated and the information is dismissed.[4]

SPRINGER, J., with whom STEFFEN, J., agrees, concurring:

I agree with the majority opinion that the information in this

---

[2]Apparently, Schertz's trial attorney, the state and the district court were under the impression that Schertz could form the intent to commit these crimes months after she withdrew the money from the bank. Schertz's trial attorney indicated that the intent to defraud was formed when the bank notified Schertz of its mistake because Schertz was unable to immediately repay the money in full. This argument is repudiated by fundamental principles of criminal jurisprudence. "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion." Morissette v. United States, 342 U.S. 246, 250 (1952); *see also* Wayne R. LaFave & Austin W. Scott, Jr., Handbook on Criminal Law § 24 at 176, § 34 at 237-39 (1972); Charles E. Torcia, Wharton's Criminal Law § 27 at 134-35, § 76 at 367-69; Black's Law Dictionary 727 (5th ed. 1979); Robey v. State, 96 Nev. 459, 611 P.2d 209 (1980).

[3]At oral argument, the state suggested that because Schertz entered a plea of no contest, the state was deprived of its opportunity to present evidence against Schertz. This argument is belied by the record. The district court conducted a hearing on Schertz's motion to withdraw her plea of no contest. During the hearing, the state presented evidence to the district court. Schertz's trial attorney appeared as a witness for the state. The state actively questioned numerous witnesses, including the bank branch manager. The state had ample opportunity to develop evidence against Schertz.

[4]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this appeal.

case must be dismissed, but I have some things to add. In my view, the information did not in any of its three counts state a public offense. Further, the undisputed facts in this case—that a bank error resulted in a transfer of funds to Schertz's account, which were drawn on by Schertz only after she advised the bank of the apparent error—make it legally impossible for valid criminal charges to have been filed against Schertz. The only possible explanation that I can see for what happened in this case is that the bank was able to abuse the criminal justice system and to use the district attorney's office as a collection agency. Finally, it is quite clear to me that instead of charging Schertz with larceny, the State should have charged the guilty bank agents with extortion.

Ms. Schertz was charged with the commission of three crimes, grand larceny, obtaining money by false pretenses, and conspiracy to obtain money by false pretenses.

The larceny charge was based on NRS 205.237. The gist of this crime is the "unlawful use" of a credit card "to obtain intentionally" money to which one is not entitled. The information states that at some unspecified time between April 9, 1990, and April 24, 1990, Schertz used a credit card to obtain money from Mildred and Edwin Harder. Schertz never *obtained* any money from anyone. A mistaken bank entry resulted in her account being credited. She did not use her card to "obtain" this money. She did not even know that she had "obtained" the money until she examined her account records. She certainly did not "use" a card to obtain money belonging to the Harders. The money that she obtained was by withdrawal of money from her own bank account after the bank had erroneously "obtained" it for her. Even if Ms. Schertz had not told bank agents about the error, and even if bank agents had not told her that she was free to withdraw the money, there is no possibility, under the circumstances of this case, that she could be found guilty of grand larceny and a violation of NRS 205.237.

Likewise, there is no possibility that Ms. Schertz committed the crime of obtaining money by false pretenses because no pretenses or representations were ever made by Schertz and, understandably, no pretenses or representations are charged in the information. Since there were no false pretenses in fact and none charged in the information, neither this crime nor a "conspiracy" to commit this crime could possibly have been established. There could be no valid plea bargaining in this case because no crime was charged and no crime was committed. This is a civil case; and when Schertz was unable to pay her civil debt in cash, the bank pressed criminal charges.

The facts that gave rise to the filing of this information are

undisputed and agreed upon by the State. One day when Ms. Schertz checked her bank account at an automated teller she discovered that her account had been credited with what she "believed to be an error of five thousand and something dollars in my account." She immediately went into the bank and told them of the error. Bank personnel checked Schertz's records and told her that no mistake could be discerned. Schertz was told that insofar as the bank was concerned she was free to dispose of the money. There is no suggestion of fraud or stealth or any misconduct on her part. She used the money to pay off her student loan, medical and dental bills and to reupholster her couch.

Although it could be argued that Ms. Schertz should have made further inquiry before spending the money, there is nothing in the record that even remotely suggests that she intentionally cheated the bank or stole the money. She made no representations of any kind to the bank and any transfer of funds by the bank to her account was done at the bank, by the bank and before Ms. Schertz had any knowledge that the transfer had been made. The bank, of course, had a civil claim against Schertz, but Schertz obviously committed no crime. How she was treated by Valley Bank and the Washoe County District Attorney's office has a Kafkaesque quality to it.[1]

I go to this detail to show that it is absolutely impossible,

---

[1]Mr. Edwards of the district attorney's office put the State's phoney case in this disconnected and obviously legally unfounded way:

> [G]iven the fact she wasn't taking the money with the intent at the time that she withdrew it from the automatic teller, knowing perhaps there was a mistake in acting on a mistaken belief that she had a right to that money, but when the bank confronted her and said you give back the money and the criminal charges became pending, then there was a factual basis [for criminal proceedings].

The nature of the persecution of debtor Joyce Ann Schertz may be best exemplified in the following cross-examination of Schertz's husband, Theodore Hawkins, by prosecutor Edwards:

Q. So you swear in this affidavit that you know she has not been previously arrested or convicted; is that correct?
A. As far as I know, this is the only one that I know about.
Q. So you didn't know about her prior convictions or arrests? [Prosecutor names supposed, but unsubstantiated, convictions/arrests.]
A. No, because I didn't know about them. She's told me before we got married—I said: Now, Joyce, you tell me everything in your past. Because after we get married I don't want something to fly up and hit me in the face.

I do not know whether Joyce Schertz was ever arrested for other crimes; documentation of these convictions does not appear in the record. I must wonder if prosecutor Edwards ever felt any qualms or pangs of conscience about having made these unnecessary, defamatory revelations about Ms. Schertz to her new husband.

legally and factually, for Schertz to have been convicted of any crime. If there is any crime committed in this case, it is by Valley Bank and its agents.

Some two to four months after the mistake had been made, the bank sent two "security" agents to Ms. Schertz's house to shake her down for *immediate* payment of the money that the bank had mistakenly given to her. Two men arrived at her house and told her they wanted the bank's money right then and that if she did not pay, they would have her arrested. She offered to pay installments because she did not have $5,000.00. They pressed charges and had her arrested.

My reading of the record makes it very clear that the bank's agents told Schertz, in effect, "Pay now or go to jail." Schertz offered to make good the bank's mistake by paying the bank in installments, but this was not good enough for the bank, and it continued to press: "Pay now, or we will have you arrested." They carried out their threat, and Schertz ended up in jail.

This case is quite disturbing to me; and this prompted me to add these comments to the majority opinion.